Brittany HORN, Individually, and Brittany Horn, as parent and Natural Guardian of Libby Ann Scott, Deceased, Appellants–Plaintiffs

v.

Kristi L. HENDRICKSON and Eric W. Scott, Appellees–Defendants.

### No. 82A05–0402–CV–83.

Court of Appeals of Indiana.

March 29, 2005.

Daniel A. Barfield, Gerling Law Offices, Evansville, IN, Attorney for Appellants.

John H. Shean, Shean Law Offices, Bloomington, IN, Attorney for Amicus Curiae.

James D. Johnson, Max E. Fiester, Rudolph, Fine, Porter & Johnson, LLP, Evansville, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE[1]

Brittany Horn appeals the trial court's dismissal of her wrongful death claim under Indiana Trial Rule 12(B)(6). We address the following issues on appeal:

1. Whether a viable fetus is a "child" under Indiana's child wrongful death statute, Indiana Code Section 34–23–2–1 ("the statute").

2. Whether the statute, as interpreted by our supreme court in *Bolin v. Wingert,* 764 N.E.2d 201 (Ind.2002), violates Article I, Section 23 of the Indiana Constitution.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On July 10, 2001, Horn was six-months pregnant and a passenger in Eric Scott's vehicle. Scott and Horn were traveling southbound on Highway 41 in Evansville when they came upon a northbound vehicle driven by Kristi Hendrickson. As Scott turned off Highway 41 and onto Riverside Drive, the two vehicles collided. Horn's unborn fetus died as a result of this collision.

On July 10, 2003, Horn filed a two-count complaint against Hendrickson, alleging that the stoplight which guarded the intersection where the collision occurred was red when Hendrickson entered it, that Horn's fetus was viable at the time of the collision, and that Hendrickson is liable for both Horn's injuries and the death of Horn's viable fetus. Hendrickson moved to dismiss Horn's child wrongful death claim under Trial Rule 12(B)(6). In particular, Hendrickson conceded for purposes of her motion to dismiss that Horn's six-month-old fetus was viable at the time of the collision, but she argued that under our supreme court's decision in *Bolin,* Indiana does not recognize a wrongful death claim for the death of an unborn child. Following a hearing, the trial court granted Hendrickson's motion and dismissed Horn's child wrongful death claim. This appeal ensued.

### DISCUSSION AND DECISION

#### Standard of Review

A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a claim rather than the facts supporting the claim. *Gorski v. DRR, Inc.,* 801 N.E.2d 642, 644–45 (Ind.Ct.App. 2003). Dismissal for failure to state a claim is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.*

Here, Hendrickson moved to dismiss Horn's child wrongful death claim on the ground that the decision in *Bolin* precluded Horn's claim. As we discuss in detail, below, the court in *Bolin,* 764 N.E.2d at 207, held that "only children born alive fall under Indiana's Child Wrongful Death Statute." But Horn raises multiple arguments why *Bolin* should not apply in this case, including that *Bolin* is distinguishable on its facts, that the holding in *Bolin*

1. We held oral argument at the Indiana University School of Law in Bloomington on November 11, 2004. We commend counsel for the quality of their arguments.

constitutes obiter dictum, and that *Bolin* was wrongly decided. Horn also maintains that the court's interpretation of the statute in *Bolin* renders the statute unconstitutional. We address those arguments in turn.[2]

### Issue One: Indiana's Child Wrongful Death Statute

In *Bolin*, Rebecca Bolin's car was struck from behind by a vehicle driven by Brandon Wingert. The impact proximately caused Bolin to miscarry her eight- to ten-week-old fetus. The trial court granted Wingert's motion for summary judgment on the Bolins' claim for the wrongful death of their unborn child. This court affirmed the trial court. Our supreme court granted transfer and in the first and second sentences of its unanimous opinion stated: "In a case of first impression under Indiana's Child Wrongful Death Statute, we address the question whether an eight- to ten-week-old fetus fits the definition of 'child.' We conclude that it does not." *Bolin*, 764 N.E.2d at 203. In the remainder of the opinion the court explained its rationale and ultimately concluded that "only children born alive" fall under the statute. *Id.* at 207.[3]

█ Despite Horn's arguments to the contrary, our supreme court's opinion in *Bolin* means that her viable fetus was not a "child" as defined under the statute. It is true that, in appellate opinions, statements not necessary for the determination of the issues presented are nonbinding obiter dictum. *See Koske v. Townsend Eng'g Co.*, 551 N.E.2d 437, 443 (Ind.1990) (citing *Szilagyi v. State ex. rel. La Porte Cmty.*

*Sch. Corp.*, 249 Ind. 400, 410, 233 N.E.2d 181, 183 (1967)). In *Bolin* the court not only concluded that an eight- to ten-week-old fetus does not fit the definition of "child," 764 N.E.2d at 203, but declared that when the legislature enacted the statute, it "intended that only children born alive fall under [it]." *Id.* at 207. Thus, Horn has made a credible argument that *Bolin* addressed a larger question than the facts required.

Our supreme court's holding in *Bolin* is nevertheless clear: only a child "born alive" fits the definition of "child" under the child wrongful death statute ("the statute"). *Id.* In reaching that conclusion, the court declared a "bright line" test. Despite the salient factual difference here, namely, that Horn's fetus was viable, the *Bolin* opinion categorically precludes all parents from bringing a wrongful death claim for the death of a viable or nonviable fetus.

█ It is not this court's role to reconsider or declare invalid decisions of our supreme court. As we explained in *Dragon v. State*, 774 N.E.2d 103, 107 (Ind.Ct. App.2002), *trans. granted, then grant of trans. vacated:*

> We are bound by the decisions of our supreme court. Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment. While Indiana Appellate Rule 65(A) authorizes this [c]ourt to criticize existing law, it is not this court's role to "reconsider" supreme court decisions.

---

**2.** Amicus curiae Indiana Right to Life, Inc., is substantively aligned with Horn and raises essentially the same arguments as Horn.

**3.** Indiana Code Section 34–24–2–1 provides in relevant part:

(a) As used in this section, "child" means an unmarried individual without dependents who is:
(1) less than twenty (20) years of age; or
(2) less than twenty-three (23) years of age and is enrolled in an institution of higher education or in a vocational school or program.

(Citations omitted); *see also Stytle v. Angola Die Casting Co.,* 806 N.E.2d 339, 345 (Ind.Ct.App.2004) (citing *Computer Co., Inc. v. Davidson Indus., Inc.,* 623 N.E.2d 1075, 1079 (Ind.Ct.App.1993), *overruled on other grounds*). And as Justice Sullivan noted in *Floyd v. State,* 650 N.E.2d 28, 35 (Ind.1994), the Court of Appeals is well aware of the controlling precedents of our supreme court and has no desire to proceed in conflict with them. We are an intermediate appellate court. Thus, Horn's request that we reconsider the holding in *Bolin* is inappropriate.

Still, our supreme court has sometimes revisited previously decided issues. In *Mullin v. City of South Bend,* 639 N.E.2d 278, 283–84 (Ind.1994), the court reaffirmed that a governmental entity owes no duty to the public at large and adopted the test set forth in *City of Rome v. Jordan,* 263 Ga. 26, 426 S.E.2d 861, 863 (1993), to decide whether such an entity owes a private duty to a particular individual. Then, five years later, in *Benton v. City of Oakland City,* 721 N.E.2d 224, 228 (Ind.1999), the court revisited the issue, returned to the general principle that a governmental entity, with limited exceptions, owes a "duty to use ordinary and reasonable care under the circumstances[,]" and concluded that the test adopted in *Mullin* should only be applied when a governmental unit is alleged to have breached a duty to provide emergency services. Both opinions were unanimous and authored by Justice Sullivan.

Likewise, in *Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind.1999), in a unanimous opinion, our supreme court declared that Article I, Section 11 of the Indiana Constitution "prohibits police stops of motorists except on the reasonable suspicion required by [*Brown v. State,* 653 N.E.2d 77, 79–80 (Ind.1995), and *Taylor v. State,* 639 N.E.2d 1052, 1054 (Ind.Ct.App.1994) ]."

But only a few months later in *State v. Gerschoffer,* 763 N.E.2d 960, 966 (Ind. 2002), the court disregarded *Baldwin,* and held that sobriety checkpoints, in which police stop motorists without probable cause or reasonable suspicion, do not per se violate Article I, Section 11.

■ Put another way, our supreme court's words and opinions are not carved in stone, and it is not inappropriate for the parties or the judges of this court to ask the court to reconsider earlier opinions. Writing separately in *Miller v. Mayberry,* 506 N.E.2d 7, 12 (Ind.1987) (Shepard, C.J., concurring), Chief Justice Shepard agreed with the majority that the pecuniary loss rule had been the court's long-standing interpretation of the previous version of the child wrongful death statute. But the Chief Justice also stated that he did "not believe that the separation of powers prohibits the judicial department from altering its view on the meaning of the statute" which "is still simply a matter of judicial construction." *Id.*

At least one other state supreme court has changed its mind when asked to revisit precedent on a nearly identical issue. In *Aka v. Jefferson Hosp. Ass'n, Inc.,* 344 Ark. 627, 42 S.W.3d 508, 512 (2001), the Arkansas Supreme Court overruled its earlier interpretation of Arkansas' wrongful death statute and held that a viable fetus is a "person" within the meaning of that statute. If our supreme court were to overrule *Bolin,* it would do no harm. As discussed below, for more than thirty years, from 1971 until *Bolin* was decided in 2002, tortfeasors had no legitimate expectation of immunity from a wrongful death cause of action for the prenatal death of a viable fetus.

In *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 403, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), when the United States Supreme Court overruled long-

standing precedent and recognized a wrongful death action under general maritime law, the court stated:

[A] judicious consideration of precedent cannot be as threatening to public faith in the judiciary as continued adherence to a rule unjustified in reason, which produces different results for breaches of duty in situations that cannot be differentiated in policy.

Here, our supreme court's interpretation of the child wrongful death statute in *Bolin* "produces different results for breaches of duty in situations that cannot be differentiated in policy." *Id.* Thus, while *Bolin* controls on the issue of whether Horn's viable fetus is deemed a "child" under the statute, we write to explain why we believe the court should reconsider the *Bolin* opinion.

### *Britt v. Sears*

The court in *Bolin* set forth the four most common resolutions to the issue whether parents of an unborn child may recover under a child wrongful death statute: (1) permit recovery only for the death of children "born alive," (2) permit recovery only for the death of "viable" unborn children, (3) permit recovery for the death of unborn children that are "quick," and (4) permit recovery for the death of any unborn child. *Bolin*, 764 N.E.2d at 205 (citations omitted). As we know, the court held that under the statute, our legislature intended to permit recovery only for the death of children born alive. But an examination of the history of the statute,

together with Indiana's other two wrongful death statutes, supports a conclusion that our legislature intended to permit recovery not only for the death of children born alive but also for the death of viable unborn children.[4]

As the court explained in *Bolin*, 764 N.E.2d at 203:

At common law, a person killed by another's tortious acts had no right to recover damages. The victim's dependents or other heirs therefore had no recognized cause of action, either. This inequity gave rise to wrongful death statutes, first in England in 1846, and soon thereafter in every United States jurisdiction. Indiana's wrongful death statutes are found at Indiana Code § 34-23-1-1 (general wrongful death statute), § 34-23-1-2 (death of adult persons), and § 34-23-2-1 (injury or death of children).

(Citation omitted). Before it was recodified, the child wrongful death statute was found at Indiana Code Section 34-1-1-8. For many years prior to 1987, the statute provided in relevant part:

The father and mother jointly, or either of them by naming the other parent as a co-defendant to answer as to his or her interest, or in case of divorce or dissolution of marriage the person to whom the custody of the child was awarded, may maintain an action for the injury or death of a child[.]

But that version of the statute did not define the term "child."

---

**4.** The first rule of statutory construction is that "[w]ords and phrases shall be taken in their plain, or ordinary and usual sense." Ind.Code § 1-1-4-1(1). The plain, ordinary, and usual meaning of the word "child" includes "[a]n unborn infant; a fetus." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 332 (3d ed.1996). But as we discuss *infra*, the 1987 amendments to the child

wrongful death statute defines "child," and, thus, we must construe that definition rather than apply the plain, ordinary, and usual meaning of the word. *See Rush v. Elkhart County Plan Comm'n*, 698 N.E.2d 1211, 1215 (Ind.Ct.App.1998) (stating where legislature has defined word, this court is bound by that definition, even if it conflicts with word's common meaning), *trans. denied.*

In *Britt v. Sears,* 150 Ind.App. 487, 277 N.E.2d 20, 21 (1971), this court addressed an issue of first impression, namely, whether the father of "a full term healthy male capable of independent life" but was stillborn as a result of a fetal injury that occurred when the mother was nine months and one week pregnant could maintain a wrongful death action under Section 34–1–1–8. Acknowledging that the applicable statute did not define the term "child," this court held "that 'a full term healthy male capable of independent life' with which its mother, at the time of its death in her womb, 'was then nine months and one week pregnant' is a 'child' within the meaning of the statute[.]" *Id.* at 27. Thus, under our 1971 decision in *Britt,* parents could bring a wrongful death action against a tortfeasor for causing the death of their unborn child capable of independent life.[5]

Until 1987, Indiana had followed the pecuniary loss rule, which provided that damages for the loss of love and affection of a child were not compensable in an action for the wrongful death of a minor child. In *Miller,* 506 N.E.2d at 8, our supreme court reaffirmed that "the pecuniary loss rule [was] the law in Indiana." As we have noted, Chief Justice Shepard wrote a separate opinion in *Miller* in which

he agreed that the pecuniary loss rule applied and that it "has been the long-standing interpretation given" to Section 34–1–1–8, but suggested that it would not be inappropriate for the court to revisit its long-standing interpretation of Section 34–1–1–8. *Id.* at 12 (Shepard, C.J., concurring in result).

Only one month after the *Miller* opinion, the legislature approved Public Law 306–1987, which significantly amended Section 34–1–1–8.[6] The 1987 amendments were important for two reasons: (1) the legislature included a definition of "child" in the statute (which is the same definition of "child" as in the current statute), and (2) the legislature expanded the damages recoverable under the statute to include damages for the loss of the child's love and companionship. It is clear that the legislature passed the 1987 amendments primarily to expand the type of damages recoverable under the statute.[7] But the question presented in *Bolin* was what the legislature intended when it defined "child" under the statute.[8]

■ As our supreme court observed in *Bolin,* 764 N.E.2d at 207, child wrongful death claims are "entirely a creature of statute." And "[b]ecause [the] statute is in derogation of the common law," the court

---

**5.** Indiana Code Section 16–18–2–365 defines "viability" as "the ability of a fetus to live outside the mother's womb."

**6.** P.L. 306–1987, Section 5 provides, "Because an emergency exists, this act takes effect May 8, 1987."

**7.** In 1989, the legislature changed all references in the statute from "ward" to "protected person." *See* P.L. 33–1989. In 1998, the legislature recodified the statute as Indiana Code Section 34–23–2–1. Again, the definition of "child" has remained unchanged since 1987.

**8.** As the court in *Bolin* noted, 764 N.E.2d at 204, in *Bolin v. Wingert,* 742 N.E.2d 36, 37

(Ind.Ct.App.2001), this court relied on an incorrect version of Indiana Code Section 34–1–1–8. Indeed, although the accident in *Bolin* occurred in 1996, this court relied on the same version of the statute in effect when *Britt* was decided. Without acknowledging the 1987 amendments, this court concluded that although the court in *Britt* did use the term "viable" or "viability," the substantive holding in *Britt* contemplated that only unborn *viable* children fit within the statute's meaning. 742 N.E.2d at 38 (emphasis added). Thus, we held that the eight- to ten-week-old fetus in *Bolin* was not a "child" under Section 34–1–1–8. *Id.*

construed it strictly against the expansion of liability. *Id.* However, this court's decision in *Britt* was still good law in 1987. Indeed, *Britt* had been on the books for more than fifteen years by the time the legislature added the definition of "child" to the statute.

It is true that the legislature has expressly referred to viable unborn children in other parts of the Indiana Code. But we cannot agree that "[t]he fact that the legislature did not expressly include unborn children within the definition of 'child' in the [statute]" means that only children born alive fit within the definition of "child." *Bolin,* 764 N.E.2d at 207. Instead, given that *Britt* was established law in 1987 when the statute was amended, if the legislature had intended to *exclude* viable unborn children from the definition of "child," it would have clearly expressed its intention to nullify *Britt* when it defined the term "child." *See Burke v. Town of Schererville,* 739 N.E.2d 1086, 1092 (Ind. Ct.App.2000) (stating we must assume that legislature is mindful of both court decisions and existing law), *trans. denied.* In other words, in 1987, when the legislature expanded the scope of recovery under the statute beyond the pecuniary loss rule and defined "child," the statute unmistakably superseded *Miller* but did not likewise repudiate our holding in *Britt* that an unborn child capable of life outside the womb is a "child."

### Statutes in Pari Materia

Our second concern with *Bolin* is that the court did not apply a fundamental rule of statutory construction, namely, the rule that in construing a particular statute, related statutes are in pari materia and should also be considered to effectuate legislative intent. " 'Where statutes address the same subject, they are in pari materia, and we harmonize them if possible.' " *Hall Drive Ins., Inc. v. City of Fort*

*Wayne,* 773 N.E.2d 255, 257 (Ind.2002) (citation omitted); *see also Clark v. Kenley,* 646 N.E.2d 76, 78 (Ind.Ct.App.1995) (stating statutes which address same subject matter are in pari materia and should be construed together to produce harmonious result), *trans. denied.*

In concluding that the term "child" only includes children born alive, the court in *Bolin* addressed four "concepts" that appear in the statute's definition of "child": "an (1) unmarried, (2) individual, (3) without dependents, (4) who is less than twenty years of age." 764 N.E.2d at 206. The court concluded that those terms "tend to indicate the legislature contemplated that only living children would fall within the definition of 'child.' " *Id.* The court, however, did not look to Indiana's other wrongful death statutes for guidance on the use of those terms and how they should be interpreted. We agree with Horn that the legislature used the terms "unmarried," "without dependents," and "who is less than twenty years of age" to distinguish child wrongful death claims from claims under the general wrongful death statute. Horn points out in her brief that:

> [The statute] defines a child as [an individual] under age twenty or under age twenty-three, if the child is enrolled in an institution of higher education or vocational school. It is possible for a person under age twenty or [under age twenty-three] in college or vocational school to be married and/or have children. If a person in that situation were to die as a result of a tort[,] and [the statute] did not exclude married persons and those with dependents from coverage ..., the wife and/or children of the ·deceased [under the general wrongful death statute], and the deceased parents [under the statute], would all have claims for loss of love and affection.

The logical conclusion to be drawn is that[ ] by defining a child as someone who [is] "unmarried" and "without dependents[,]" *the [l]egislature showed that it did not intend to permit for recovery under both statutes.* Apparently, it was the [l]egislature's judgment that once a person becomes an "adult" by marrying, having a child, graduating [from] college or vocational school, or reaching the age of twenty, the parents' connection with the child may be too tenuous (or nonexistent) to support a claim for the loss of love and affection.

Brief of Appellant at 22 (citation omitted, emphasis added). And, as Horn notes, the legislature continued along this path in 1999 when it enacted the adult wrongful death statute, which defines an "adult person" as an unmarried individual who does not have dependents and who is not a child, as defined in Indiana Code Section 34–23–2–1. *See* Ind.Code § 34–23–1–2. Moreover, in order for a parent or child of the adult person to recover damages under the statute, the parent or child has the burden of proving "a genuine, substantial, and ongoing relationship with the adult person[.]" I.C. § 34–23–1–2(f).

█ When Indiana's three wrongful death statutes are read together in pari materia, it seems clear that the terms "unmarried," "without dependents," "less than twenty years of age," and "less than twenty-three years of age and ... enrolled in an institution of higher education or ... vocational school" were not included in the statute's definition of "child" in order to exclude an unborn viable fetus. Rather, the legislature included those terms to avoid the enactment of redundant statutes and the duplication of wrongful death claims.

█ Our long-standing decision in *Britt,* the legislature's failure to clearly repudiate *Britt,* and an examination of the language used to define "child" which correlates perfectly with the other wrongful death statutes, all indicate that the *Bolin* opinion read a "born alive" requirement into the statute which is not there. As this court stated in *Mitchell v. State,* 813 N.E.2d 422, 429 (Ind.Ct.App.2004), *trans. denied,* "we do not ordinarily read requirements into statutes." And as our supreme court has stated, "[n]othing may be read into a statute which is not within the manifest intention of the legislature as ascertained from the plain and obvious meaning of the words of the statute." *Indiana Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 946 (Ind.1999). While the court's decision in *Bolin* drew the line and created a "born alive" test, that test cannot be found in the statute.

### A Viable Fetus Is An Individual

█ Finally, the pivotal word in the statute is "individual." In order to be a child under the statute, one must be an unmarried individual without dependents who is less than twenty years of age or less than twenty-three years of age and is enrolled in an institution of higher education or in a vocational school or program. I.C. § 34–23–2–1(a) (emphasis added). The word "individual" is not defined. We give undefined words in statutes their plain, ordinary meaning. *See Armstead v. State,* 806 N.E.2d 872, 873 (Ind.Ct.App. 2004), *trans. denied; see also* Ind.Code § 1–1–4–1(1).

In *Bolin,* 764 N.E.2d at 206, our supreme court addressed use of the term "individual" as follows:

The words chosen by the legislature to define "child" have accepted public meanings that point in a similar direction. Black's Law Dictionary defines "individual" as "existing as an indivisible entity." Webster's Dictionary says

among other things that an "individual" is a being "referred to by a proper name." This is language human beings use to describe to other independently living human beings.

(Citations and brackets omitted). But by definition, a viable fetus is an "individual." Indeed, the viability of the fetus proves its status as a separate and distinct entity. As already noted, our legislature has defined the term "viability" to mean "the ability of a fetus to live outside the mother's womb." I.C. § 16–18–2–365. A viable fetus is a fetus that can live *independently* from its mother.[9] Thus, our legislature has made it an act of murder for a person to knowingly or intentionally kill a fetus that has attained viability. *See* Ind.Code § 35–42–1–1(4).

Advances in obstetrics and neonatology have compelled the courts in all jurisdictions to abandon the early common law notion established 120 years ago in *Dietrich v. Inhabitants of North Hampton*, 138 Mass. 14, 1884 WL 4976 (1884) (per Holmes, J.), that a fetus and its mother are a single entity. *See Atkinson v. United States*, 825 F.2d 202, 207 (9th Cir.1987) (Noonan, J., concurring). Thus, we respectfully disagree with *Bolin* that a viable fetus is not an individual and that the term "individual" as used in the child wrongful death statute applies only to children born alive.[10]

This case is not about a zygote or an embryo or when life begins. This case is not about any of the controversial issues associated with the United States Supreme Court's opinion in *Roe v. Wade*, 410 U.S. 113, 158, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), which held that the word "person," as used in the Fourteenth Amendment, does not include the unborn. The question before us here does not concern the rights of the unborn; rather, this case is about the rights of parents. The issue here is not whether a viable fetus is a "person" but whether it is an "individual" under the statute. We believe that it is.[11]

In *Bolin*, 764 N.E.2d at 201, our supreme court noted that "[i]f a statute is susceptible to multiple interpretations ... we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent." The court also stated that our courts "presume the legislature intended logical application of the

---

**9.** This is basically the same language this court used in *Britt* when describing those unborn children who fall within the meaning of "child" under our previous wrongful death statute. *See* 277 N.E.2d at 27 (holding full term healthy male capable of independent life was "child" under applicable version of I.C. § 34–1–1–8).

**10.** Regarding the court's observation in *Bolin*, 764 N.E.2d at 206, that individuals are "referred to by a proper name," it is common for parents to give their viable fetus a proper name prior to its actual delivery. In this case, Horn's unborn child was named "Libby Ann Scott."

**11.** It is significant that our legislature defined "child" as an "individual" and not as a "person." Had the legislature used the word "person" rather than "individual," we could infer without much doubt that it intended to limit wrongful death claims to those arising from the death of children born alive. But by using the term "individual," the legislature indicated its intent to include not only children born alive but also unborn viable children, who are not "persons" under *Roe*, but who are "individuals." It may well be that the meaning of "person" and the meaning of "individual" are on a collision course. But the question of whether a fetus is a person entitled to protection under the Fourteenth Amendment rests with the United States Supreme Court. Our courts can, however, recognize that a viable fetus is an individual for purposes of Indiana's child wrongful death statute. Again, perhaps it was for that very reason that our legislature used the term "individual" rather than the term "person" when defining a child.

language used in the statute so as to avoid unjust or absurd results." *Id.* at 204. Under *Bolin's* interpretation of the statute, a person whose wrongful act results in the death of a viable fetus owes no civil duty to the parents and is not a tortfeasor, even if that same person is convicted of feticide based on the same facts. That outcome is not only incongruous, but it is also an anomaly in Indiana law. We do not believe the legislature intended such an unjust result.

In 1884, in an early landmark case, the Supreme Judicial Court of Massachusetts rejected a wrongful death claim where the mother fell, the fall caused a miscarriage, and the child died shortly after his premature birth. *Dietrich,* 138 Mass. at 14–15. The mother had a verdict for her damages. The issue was whether an action could be maintained for the wrongful death of her child. The court observed that "no case, as far as we know, has ever decided that, if the infant survived, it could maintain an action for injuries received by it" and that "a pretty large field of litigation has been left unexplored until the present moment." *Id.* at 15–16. The court held that an action could not be maintained for the death of the child, who was not a person under the Massachusetts statute, and reasoned that "as *the unborn child was a part of the mother* at the time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her...." *Id.* at 17 (emphasis added). Likewise, in *Bolin,* our supreme court concluded that a viable fetus is not an individual under the child wrongful death statute, but that negligently injured expectant mothers are not without recourse, and the mother "may claim damages to compen-sate her for her miscarriage." 764 N.E.2d at 207–08.

The holding in *Bolin* that parents in Indiana cannot recover for the wrongful death of a viable fetus is a return to the 19th century when, in tort law, a fetus and its mother were considered one and the same. We do not believe that the Indiana legislature intended to turn the clock back a century when it modified the child wrongful death statute in 1987. For the reasons explained herein, should Horn seek transfer, we would encourage our supreme court to address Horn's arguments and reconsider its interpretation of Indiana Code Section 34–23–2–1.

### Issue Two: Article I, Section 23

▬ Horn also raises multiple federal and state constitutional attacks on *Bolin's* interpretation of the statute. Specifically, Horn asserts that Indiana Code section 34–23–2–1, as interpreted by *Bolin,* is unconstitutional. Because we conclude that Horn's argument under Article I, Section 23 should be dispositive, we only address that constitutional claim.[12]

The appellant in *Bolin* did not raise any constitutional claims. Accordingly, Horn presents an issue of first impression regarding Article I, Section 23, namely, whether the child wrongful death statute, as interpreted by *Bolin,* violates Indiana's Equal Privileges and Immunities Clause. Because there are no inherent differences between the parents of a child born alive and the parents of a viable fetus, we conclude that the statute, as interpreted in *Bolin,* violates Article I, Section 23.

▬ In *Collins v. Day,* 644 N.E.2d 72, 80 (Ind.1994), our supreme court established the following two-part test to be

---

**12.** Horn also contends that *Bolin's* interpretation of the statute renders the statute unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and the Due Course of Law Clause of Article I, Section 12 of the Indiana Constitution.

applied to claims under Article I, Section 23:

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.

As the court further explained in *Collins,* 644 N.E.2d at 78, legislative classification under Article I, Section 23 must be "based upon substantial distinctions germane to the subject matter and the object to be attained." (Citation omitted). In other words,

> [t]he distinctions must involve something more than mere characteristics which will serve to divide or identify a class. There must be *inherent differences in situation related to the subject-matter of the legislation* which require, necessitate, or make expedient different or exclusive legislation with respect to the members of the class.

*Id.* (citation omitted, emphasis added).

Regarding the first part of the *Collins* two-part test, Hendrickson baldly asserts that "[p]arents giving birth to a child are inherently different from parents who do not have children born alive." Brief of Appellee at 14. But Hendrickson fails to articulate how those groups of parents are inherently different. Significantly, and as we have emphasized, the statute confers rights on the *parents,* not on the children. Thus, in evaluating the statute, the two relevant groups are parents of a child born alive and parents of a viable unborn fetus, and the question is not whether the two classes of offspring are inherently different.

Even under the relaxed scrutiny of *Collins,*[13] there is no inherent distinction between parents of a child born alive and parents of a viable unborn fetus. Both groups of parents have the same interest at stake, namely, the wrongful death of their child, and they suffer the same loss. Both groups of parents have suffered the loss of a child by a wrongful act and are in the same class for purposes of Article I, Section 23. Any distinction between the two groups of parents is a distinction without a constitutional difference.

The concurring-in-result opinion states that "The litigation cost to prove viability" is an inherent difference which justifies disparate treatment between classes of injured persons, in this case, parents. Op. at 704–05. This is a convenient character-

---

**13.** In *Collins,* 644 N.E.2d at 81, after articulating the new two-part standard for evaluating Indiana equal protection claims, the court made the following prediction:

> This Court anticipates that our independent state privileges and immunities jurisprudence will evolve in future cases facing Indiana courts to assure and *extend protection* to all Indiana citizens *in addition to that provided by the federal Fourteenth Amendment.*

(Emphases added). The promise of *Collins* has not been realized. As Judge Barnes notes in the lead opinion in *Morrison v. Sadler,* 821 N.E.2d 15, 22 (Ind.Ct.App. 2005), of some "ninety reported 'Equal Privileges and Immunities' cases following *Collins* and its clarifi- cation of Article 1, § 23 analysis, only three have finally resulted in holdings (after supreme court review) that a particular statute violated Article 1, § 23." One might well conclude that the Indiana Privileges and Immunities Clause has no teeth. *See* Jon Laramore, *Indiana Constitutional Developments: The Wind Shifts,* 36 IND. L.REV. 961, 962 (2003) (stating "[A]lthough Indiana's 'equal privileges and immunities' language has been held to have different meaning from the Federal Equal Protection Clause, the linguistic difference has not led to significantly different outcomes, and the Indiana standard may be less restrictive of legislative classification than the federal rule.").

istic which appears "to divide or identify a class." *Collins,* 644 N.E.2d at 78. But the additional litigation cost to prove viability is not an "inherent characteristic" of the parents of viable unborn children that distinguishes them from parents of children born alive.

Whether the viable fetus would have been born alive is an issue subject to proof at trial and not unlike or more difficult to prove than any other medical issue tried in Indiana courts on a daily basis. Indeed, the viability of an unborn fetus killed in utero may be proven by clinical autopsy evidence. A jury can determine whether the parents have established by a preponderance of the evidence that their viable fetus would have been born alive but for the intervening wrongful act. This is the same type of evidence the State must present to prove beyond a reasonable doubt that a defendant has murdered a viable fetus under Indiana Code Section 35–42–1–1(4). In the end, the fact that parents of a viable fetus may be required to expend greater effort and resources in litigating their wrongful death claim than the parents of a child born alive does not qualify as an "inherent difference[ ] in situation" for purposes of the Equal Privileges and Immunities Clause. *Id.*

It is true that the parents of an unborn viable fetus who is killed by the wrongful act of another may have more difficulty in proving damages for the loss of love and affection of their child. Further, the fact that the child was born alive, which allowed the parents to touch and see the child prior to its death, is a valid consideration for the jury in awarding damages. But it is not uncommon for the parents of a stillborn fetus to hold their child, and like the parents of a child born alive, parents of an unborn viable fetus have been damaged by the loss of their progeny whose love and affection they would have enjoyed, but for the intervening wrongful act.

Finally, although Horn did not raise the argument, the court's interpretation of "child" in *Bolin* raises an equal privileges and immunities problem for fathers of unborn viable children. As we have noted, our supreme court in *Bolin,* 764 N.E.2d at 207–08, emphasizes that a woman's pregnancy may be taken into account in calculating her own damages from the loss of her fetus in a negligence action. However, the same cannot be said for the father of an unborn viable child. We can discern no legitimate explanation for such disparate treatment that is reasonably related to the characteristics that distinguish fathers from mothers of unborn viable children. But that is a question left for another day. In sum, we hold that under our supreme court's interpretation of the child wrongful death statute in *Bolin,* as applied to these facts, the statute violates Article I, Section 23 of the Indiana Constitution.

## CONCLUSION

We conclude that under *Bolin,* Horn may not bring a wrongful death claim under Indiana Code Section 34–23–2–1 because her viable fetus was not born alive. We also conclude that the *Bolin* opinion, as applied to these facts, renders the statute unconstitutional under the Equal Privileges and Immunities Clause of Article I, Section 23. The Article I, Section 23 issue was not raised or decided in *Bolin.* Nevertheless, because we do not hold that the statute is unconstitutional on its face but that it is unconstitutional as interpreted by our supreme court, we cannot reverse the trial court. Just as we have no authority to overrule *Bolin* directly, we cannot disregard supreme court precedent and purport to overrule *Bolin* indirectly on constitutional grounds. Therefore, while we agree with Horn that the statute violates the

Indiana Constitution as applied to her, a parent of a viable fetus, we must affirm the trial court's dismissal of her child wrongful death claim. Horn has no remedy for the death of her fetus unless she seeks and obtains transfer, and our supreme court reconsiders and overrules its interpretation of the statute, or the legislature repudiates *Bolin.*

Affirmed.

SULLIVAN, J., concurs.

MATHIAS, J., concurs in result with separate opinion.

MATHIAS, Judge, concurring in result.

I respectfully concur in result. I believe that the entirety of Horn's argument is controlled by *Bolin v. Wingert,* 764 N.E.2d 201 (Ind.2002). This court need proceed no further.

I take issue with the majority's creation of the interim legal status of an "individual" under the statute. Whether the majority wishes to recognize it or not, assigning a viable fetus the status of an "individual" will not be a singular or uniform definition. Rather, the majority's opinion will create a complicated, multi-tiered definition, completely dependent upon the level of care available to the mother and fetus at the time of injury. Will a fetus not be "viable" and therefore not an "individual" if the level of care at the delivery facility is a local county general hospital without appreciable advanced prenatal care? If the same fetus could be viable in a large metropolitan hospital with highly specialized prenatal care, should viability and "individual" status be subject to establishment merely on the chance of location of the place of injury? Will the new standard withstand constitutional scrutiny when the injury occurs in a location where only a lower level of care is available? These are all questions ignored by the majority and

that are more properly the province of the General Assembly. These issues should be resolved through proactive public policy debates in the legislative branch of government, rather than through reactive interpretation of statutory language by the judicial branch of government.

The majority also criticizes our Supreme Court for allegedly ignoring the *in pari materia* rule of statutory construction. Not only do I believe the criticism is unwarranted, it seems to me that the majority ignores a more fundamental rule about the separation of powers, namely the doctrine of legislative acquiescence. The General Assembly has been legally and constitutionally aware of the *Bolin* decision for all or part of four successive annual sessions and yet has not chosen to modify the statute in the way that the majority believes it should now be interpreted. The majority's interpretation should be and is unnecessary. These are the kinds of policy decisions that the Constitution of Indiana entrusts to its legislative branch of government, not to its judicial branch.

Finally, I disagree with the majority's discussion of Horn's claim under Article 1, Section 23, of the Constitution of Indiana. In *Collins v. Day,* our supreme court has clearly stated that disparate treatment of classes of individuals can be constitutional, so long as inherent differences related to the subject matter of the legislation "require, necessitate, or make expedient different or exclusive legislation with respect to members of the class." 644 N.E.2d 72, 78 (Ind.1994). The litigation cost to prove viability, which is likely to increase significantly as medical technology allows fetuses to achieve viability at earlier stages, is just such a difference. Very closely analogous differences and considerations support the constitutionality of the Workers Compensation Act and the Medical Malpractice Act. While reasonable persons might differ

on whether to distinguish between classes of injured persons on the basis of the litigation cost of proving viability, it is the prerogative of the legislative branch to do so.

For all of these reasons, I would hold that *Bolin v. Wingert* is dispositive of all issues raised in this case. I therefore concur in result.