# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 26 2016, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cortez Jones,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 26, 2016

Court of Appeals Case No.
49A04-1506-CR-695

Appeal from the Marion Superior Court

The Honorable Grant Hawkins, Judge

Trial Court Cause No.
49G05-1308-MR-55492

**May, Judge.**

[1] Cortez Jones appeals his conviction of murder.[1]  He argues the trial court erred in declining to instruct the jury on reckless homicide[2] as a lesser included offense.  We affirm.

## Facts and Procedural History

[2] In August 2013, Reginald Fagan lived with his girlfriend, Raven Sullivan, and their two children in an apartment in Indianapolis.  Anthony Kimmons, Sullivan's brother, also lived with them.  Fagan had become acquainted with Jones in the apartment complex that summer.

[3] Around 1:45 p.m. on August 20, 2013, Fagan and Kimmons were sitting on the stairs outside their apartment after Sullivan went to work.  A woman named Keisha, who lived across the street, yelled for Fagan to come over.  Fagan ignored Keisha and instead went to sit in his car in the parking lot, where he began looking at paperwork.  Kimmons remained on the stairs.

[4] Fagan looked up and saw Jones come around the side of the apartment building and shoot at the stairs where Fagan had been sitting with Kimmons.  Kimmons was still there and, as he stood up, Jones shot him.  Kimmons stepped toward the apartment, but then ran in another direction before collapsing.  Fagan got out of his car and ran away.  Jones chased him and fired shots at him.

---

[1] Ind. Code § 35-42-1-1(1).

[2] Ind. Code § 35-42-1-5.

[5] Dorenda Rogers was in an apartment at the complex and heard the gunfire. She looked out the window and saw Jones shooting at Fagan in the parking lot. She stepped out of her apartment as Fagan ran past. She saw Jones chasing and shooting at Fagan. Jones ran "right past" Rogers as she stood on the sidewalk, so she "was able to get a good look at him." (Tr. at 43.) Fagan jumped into the retention pond behind the apartment complex to avoid the gunfire, and Jones fled.

[6] Indianapolis Metropolitan Police Department (IMPD) Officer Madeline Lothamer was patrolling the area at the time and heard a report of shots fired. When she arrived at the apartment complex one minute later, bystanders pointed her toward Kimmons, who was lying on the ground. She was unable to find a pulse on Kimmons. Then she heard people screaming that someone was drowning in the pond. Officer Lothamer went over to the pond and saw Fagan, who could not swim. She went to the north end of the pond, and Fagan was able to maneuver his way toward her. Officer Lothamer helped Fagan out of the pond. EMS arrived on the scene and took Fagan to the hospital.

[7] Rogers described the shooter to the police and gave a statement to IMPD Detective Leslie VanBuskirk. Detective VanBuskirk showed Rogers a six-photo array. Rogers circled Jones' photograph, signed her name, and wrote "90% sure" beside the photo. (State's Ex. 4.)

[8] IMPD Detective Charles Benner visited Fagan at the hospital three times that day. During the first visit, as Fagan was drifting in and out of consciousness, he

identified the shooter as "Hakim," (Tr. at 256), but during a second visit, Fagan told Detective Benner the shooter was "Cortez" or "C-Dog." (*Id*. at 246.) During the third visit, Detective Benner showed Fagan a six photo array, and Fagan circled Jones' picture, signed his name, and wrote "120% positive" beside it. (State's Ex. 3.)

[9] Dr. Thomas Sozio, a forensic pathologist, conducted Kimmons' autopsy. Dr. Sozio determined Kimmons died from a single gunshot to the left arm that entered the chest, perforated the right and left lower lung lobes, and transected the inferior vena cava. The wound caused extensive internal bleeding. Dr. Sozio recovered the bullet, which had not exited Kimmons' body. Dr. Sozio determined the death was a homicide.

[10] The day after the shooting, IMPD Detective Gregory Scott located Jones at the home of his ex-girlfriend, Stacee Smith. Detective Scott executed a search warrant and, in Smith's bedroom, discovered a shoebox containing a revolver, five spent cartridge cases, live ammunition, and a knit cap. The revolver was wrapped in a yellow washcloth saturated with rubbing alcohol, and the revolver and washcloth were inside a plastic bag. Firearms examiner Michael Putzek examined the five fired casings and determined that they were fired by the revolver found in the shoebox. Puztek also testified the bullet recovered from Kimmons' body was fired from the same revolver and was the same brand and type as the live ammunition found with the revolver.

[11] The State charged Jones with Kimmons' murder and the attempted murder of Fagan.[3] After the evidence was presented, Jones tendered two instructions on reckless homicide[4] and requested they be given to the jury. The court found the evidence did not support a reckless homicide instruction and declined Jones' tendered instructions. A jury found Jones guilty as charged.

## Discussion and Decision

[12] The trial court did not abuse its discretion by declining to instruct the jury on reckless homicide as a lesser included offense of murder, as there was no serious evidentiary dispute regarding Jones' state of mind when he shot Kimmons.[5]

---

[3] Ind. Code §§ 35-42-1-1; 35-41-5-1. The State also charged Jones with being a serious violent felon in possession of a firearm, *see* Ind. Code § 35-47-4-5, and requested his sentence be enhanced for use of a firearm during a felony causing death. *See* Ind. Code § 35-50-2-11. After the jury found Jones guilty of murder and attempted murder, the State moved to have the additional charges dismissed, and the court granted that motion.

[4] The first tendered instruction defined reckless homicide:

> The crime of reckless homicide is defined by law as follows:
> A person who recklessly kills another human being commits reckless homicide, a Class C felony.
> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
> 1. The Defendant, Cortez Jones
> 2. Recklessly
> 3. Killed
> 4. Anthony Kimmons

(App. at 203.) The second tendered instruction defined the word "recklessly:"

> A person engages in conduct "recklessly" if he/she engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

(*Id*. at 204.)

[5] Jones also asks us to "reconsider precedent and grant defendants the unfettered right to have the jury instructed on inherently included lesser offenses." (Br. of Appellant at 6.) It is not our role to "reconsider or declare invalid decisions of our supreme court." *Horn v. Hendrickson*, 824 N.E.2d 690, 694 (Ind. Ct. App. 2005) (holding Indiana Supreme Court precedent is binding on appellate courts until it is changed by that

"The manner of instructing a jury is left to the sound discretion of the trial court." *Albores v. State,* 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied.* When a defendant requests an instruction on a lesser-included offense, the court first must determine "whether the lesser offense is either inherently or factually included within the crime charged." *Lane v. State*, 997 N.E.2d 83, 87 (Ind. Ct. App. 2013), *trans. denied*. Reckless homicide is inherently included in murder. *Id*. at 87-88. Thus, we move to the next step of the analysis, which requires determining "'whether the evidence provided by both parties creates a serious evidentiary dispute about the element or elements [that] distinguish the greater from the lesser offense.'" *Id*. at 88 (quoting *Young v. State*, 699 N.E.2d 252, 255 (Ind. 1998), *reh'g denied*).

[13]     The element that distinguishes murder and reckless homicide is the defendant's *mens rea* at the time of the killing. *Id*. Reckless homicide occurs when a person "recklessly" kills another human being, Ind. Code § 35-42-1-5, and a person acts recklessly "if he engages in conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2. In contrast, murder occurs when a person "knowingly" or "intentionally"[6] kills another human being. Ind. Code § 35-42-1-1(1). The State charged Jones with

---

court or by legislative enactment). Jones' request that we reconsider well-established precedent is thus inappropriate. *See id*. (declaring inappropriate a party's request that we reconsider supreme court precedent).

[6] A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. Ind. Code § 35-41-2-2(a).

killing Kimmons only "knowingly." (App. at 31.) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. Ind. Code § 35-41-2-2(b).

[14] Thus, Jones was entitled to instructions on reckless homicide if the evidence created a serious evidentiary dispute about Jones' *mens rea*. The trial court found no serious evidentiary dispute regarding whether Jones acted knowingly or recklessly when he shot Kimmons. "When an instruction is refused on grounds that a serious evidentiary dispute does not exist, we reverse only upon an abuse of discretion." *Lane*, 997 N.E.2d at 88. "An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.*

[15] Jones argues the record contained evidence he shot recklessly because he "was firing wildly without a conscious purpose." (Br. of Appellant at 14.) He directs us to a page of Fagan's deposition, but nothing therein suggests Jones was firing "wildly" when he shot Kimmons.[7] Rather, Fagan stated:

---

[7] Jones also directs us to Rogers' testimony at "Tr. 481." (Br. of Appellant at 14.) That transcript page contains trial counsel's argument in support of the reckless homicide instructions. Trial counsel's argument does not cite a specific page of Rogers' testimony, and we will not search the record to find evidence to support Jones' argument. *See Thomas v. State*, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012) ("we will not search the record to find a basis for a party's argument"), *trans. denied*. Not only did trial counsel's argument not inform us where to find Rogers' statements to support Jones' argument, but trial counsel's argument was qualified with the phrase "[i]f I recall correctly." (Tr. at 481.) Waiver notwithstanding, Rogers testified she heard shots, looked out the window, and saw Jones shooting at Fagan as he ran away. We fail to see how any description Rogers may have given about the manner in which Jones was shooting as he chased Fagan could be relevant to Jones' *mens rea* when he shot Kimmons at the stairway.

> . . . And as I look up, I seen somebody come off the side of the
> building and they shot at the stairs where I was sittin' before, but
> I wasn't there anymore. So that was two rounds, pow, pow, that
> missed. And then my brother stood up because he was still sittin'
> on the stairs and the whole shootin' caught him off guard.
>
> As he stood up, I -- the -- the -- the person shot him in the arm.

(Ex. Vol. at 121) (grammatical errors in original). Jones also did not direct us to legal authority supporting the proposition that firing a gun "wildly" is indicative of a reckless, rather than knowing, *mens rea*, and we accordingly find that argument waived. *See Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (failure to support argument with appropriate citation to legal authority and record evidence waives argument for review).

[16] Jones came around the side of the apartment building to the bottom of the stairs and began shooting directly at the stairs where Kimmons was sitting on the sixth step. Jones fired two shots that hit the stairs. Kimmons stood to flee the stairs, but Jones fired a third shot that went through Kimmons' arm and lungs, causing internal bleeding that killed Kimmons.

[17] Even if we assume for the sake of argument that Jones' choice about where to begin shooting was random,[8] we still could not conclude his shooting at

---

[8] This assumption finds little support in the record. Jones chased Fagan from his car to the retention pond, firing multiple shots at him along the way. Those facts suggest, and the jury found, that Jones intended to kill Fagan that day. *See Guyton v. State*, 771 N.E.2d 1141, 1144 (Ind. 2002) ("attempted murder requires a specific intent to kill, and is not supported by 'knowing' actions"). Yet Jones made no attempt to shoot

Kimmons, who was six steps up the stairway from Jones, was anything but a knowing killing. *See also Pinkston v. State*, 821 N.E.2d 830, 840 (Ind. Ct. App. 2004) (shooting victim "while standing close to him" precludes inference that killing was reckless), *trans. denied.* There was no serious evidentiary dispute as to whether Jones recklessly or knowingly killed Kimmons.[9] Therefore, the trial court did not err in declining Jones' tendered instructions on reckless homicide. *See id.* (court did not abuse discretion in refusing instruction on reckless homicide as a lesser included offense).

## Conclusion

[18] The trial court did not abuse its discretion in declining to instruct the jury on reckless homicide as a lesser included offense of murder because there was no serious evidentiary dispute regarding Jones' *mens rea* when he shot at Kimmons. Accordingly, we affirm.

[19] Affirmed.

Najam, J., and Riley, J., concur.

---

Rogers, who also saw him firing his gun. The jury could have inferred from those facts that Jones arrived at the scene intending to kill at least Fagan.

If Jones killed Kimmons when he intended to kill Fagan, he would still be guilty of murder rather than reckless homicide. *See White v. State*, 638 N.E.2d 785, 786 (Ind. 1994) ("Under the doctrine of transferred intent, when a person deliberately attempts to kill another but in the process kills a third person, his intent to kill is transferred and he may be found guilty of the murder of the person who was killed.").

[9] Because there was no serious evidentiary dispute, we need not address Jones' assertion the trial court erroneously found his tendered instructions were not in proper form.