## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Aug 24 2016, 10:21 am
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven J. Halbert
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

In the Matter of J.J., Child in Need of Services

E.B. (Mother),

*Appellant-Respondent,*

v.

Marion County Department of Child Services,

*Appellee-Petitioner*

Child Advocates, Inc.

*Co-Appellee (Guardian ad Litem)*

August 24, 2016

Court of Appeals Case No. 49A02-1512-JC-2216

Appeal from the Marion Superior Court Juvenile Division

The Honorable Marilyn Moores, Judge

The Honorable Danielle Gaughan, Magistrate

Trial Court Cause No. 49D09-1509-JC-2619

**Bailey, Judge.**

# Case Summary

E.B. ("Mother") appeals the trial court's order adjudicating infant J.J. ("Child") as a Child in Need of Services ("CHINS"). We affirm.

# Issues

Mother presents two issues for our review:

I. Whether the standard of review in CHINS cases is inappropriately deferential to the trial court; and

II. Whether the trial court's findings of fact and conclusions thereon are clearly erroneous.

# Facts and Procedural History

Child was born in April 2015 to Mother and Jo.J. ("Father") (collectively, "Parents").[1] At the time, Parents' older child and Mother's two children from a previous relationship (collectively, "Siblings") were subject to an open CHINS case initiated in 2012 by the Marion County Department of Child Services ("DCS"). Siblings were currently placed outside the home, and Parents were

---

[1] Father does not participate in this appeal.

ordered to participate in services as part of Siblings' case.[2] DCS met with Parents after Child's birth, and Child remained in Parents' care.

[4] On August 10, 2015, DCS received a neglect report alleging that Parents were using marijuana, there was a prostitution ring in the basement of Mother's home, and Parents were seen arguing in Mother's front yard late at night. Assessment caseworker Caitlan Shandrick ("Shandrick") conducted a preliminary inquiry. Shandrick administered drug screens to Parents and both tested positive for synthetic cannabinoids, or "spice." Shandrick also reviewed the progress notes in Siblings' CHINS case.

[5] On September 2, 2015, DCS requested authorization to file a Verified Petition Alleging that Child was a CHINS and sought removal of Child from Mother's home based on the allegations that Parents failed to provide a safe and secure home free of substance abuse, Parents tested positive for synthetic marijuana, Parents failed to participate in services in Siblings' CHINS case, service providers expressed concerns about Child's safety in the home, Parents had a domestic violence history, and the home environment was "chaotic" and possibly housing prostitution. (App. 23.) After a joint initial and detention hearing, the trial court granted DCS's request to file a CHINS petition, but ordered "continued in-home placement, over DCS'[s] objections, contingent

---

[2] Over the years, Parents were ordered to participate in home based case management, supervised parenting time, mental health services, domestic violence services, substance abuse services, and random drug screens.

upon mother and father participating in random drug screens and notes that if there are any positive screens the child is to be removed." (App. 38.)

[6] On September 16, 2015, DCS filed a petition requesting that Child be removed from Mother's home because Mother allegedly tested positive for synthetic marijuana during a subsequent drug test, Mother failed to participate in services in Siblings' CHINS case, Mother's front porch was cluttered and a basement window was unsecured, Father refused to take a drug screen, and no one appeared to be living at the address Father provided. The court held a detention hearing on September 21, 2015, and ordered Child's removal from Mother's home.

[7] On November 2, 2015, the court held a fact-finding hearing on the CHINS petition, entered findings of fact and conclusions thereon, and adjudicated Child a CHINS. After a dispositional hearing held on December 4, 2015, the court continued Child's placement outside the home, ordered Father to engage in domestic violence services, and ordered both Parents to participate in home based therapy, home based case management, a substance abuse assessment, and random drug screens.

[8] Mother now appeals.

# Discussion and Decision

# Standard of Review

[9]     A CHINS proceeding is a civil action, and thus the State must prove by a preponderance of the evidence that a child is a CHINS. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010) (citing Ind. Code § 31-34-12-3). In reviewing a CHINS adjudication, we neither reweigh the evidence nor judge the credibility of the witnesses. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). We consider only the evidence that supports the court's decision and the reasonable inferences drawn therefrom. *Id.* We will reverse only upon a showing that the trial court's decision was clearly erroneous. *Id.*

[10]    In this case, the trial court *sua sponte* entered findings of fact and conclusions thereon, and thus our review is governed by Indiana Trial Rule 52(A). *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). As to issues covered by the findings, we apply a two-tiered standard of review: first we consider whether the evidence supports the factual findings, and then whether those findings support the court's judgment. *Id.* We review the remaining issues under the general judgment standard, where we will affirm the judgment if it can be sustained on any legal theory supported by the evidence. *Id*.

[11]    Mother first argues that our standard of review in CHINS cases is inappropriately deferential to the trial court. The gravamen of Mother's argument is that a litigant on appeal faces an "insurmountable hurdle to

overturning CHINS and termination decisions." (Appellant's Br. 11.)[3]  Mother appears to both challenge our practical application of the existing standard and argue for a heightened standard of review.

Yet we need not look beyond Mother's own brief for examples of opinions in which an Indiana appellate court, employing the existing standard of review, reversed a trial court's CHINS adjudication.  *See In re S.D.*, 2 N.E.3d at 1290 (reversing trial court's CHINS determination for lack of evidence that coercive intervention of the court was necessary); *In re S.M.*, 45 N.E.3d 1252 (Ind. Ct. App. 2015) (reversing trial court's CHINS determination for lack of evidence that children were endangered or their basic needs were not met).  More importantly, as an intermediate appellate court, we are not at liberty to revise the standard of review set forth by our supreme court.  *See Horn v. Hendrickson*, 824 N.E.2d 690, 694-95 (Ind. Ct. App. 2005).  Accordingly, we apply to this case the standard articulated by the Indiana Supreme Court.

## Adjudication of Child as a CHINS

For the trial court to adjudicate a child a CHINS, DCS must prove three elements: (1) the child is under the age of eighteen; (2) one of eleven statutory circumstances (codified in Indiana Code sections 31-34-1-1 to -11) exist that

---

[3] In support, Mother cites a journal article calculating the appellate reversal rate in a sampling of termination of parental rights ("TPR") cases and arguing for greater appellate scrutiny.  *See* Karen A. Wyle, *Fundamental Versus Deferential: Appellate Review of Terminations of Parental Rights*, 86 Ind. L.J. Supp. 29, 29-31 (2011) (finding that in TPR cases decided by the Indiana Court of Appeals between March 1, 2008 and November 30, 2009, the Court of Appeals affirmed the trial court in 210 of 223 cases).  The article does not conduct a similar analysis of CHINS cases.

would make the child a CHINS; and (3) the child needs care, treatment, or rehabilitation that he or she is not receiving and that is unlikely to be provided or accepted without the coercive intervention of the court. *In re K.D.*, 962 N.E.2d at 1253 (citing *In re. N.E.*, 919 N.E.2d at 105). DCS alleged that Child was a CHINS under Section 31-34-1-1, the general neglect provision, which states:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

I.C. § 31-34-1-1. A CHINS adjudication under Indiana Code section 31-34-1-1 "requires three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d at 1287.

*Findings of Fact*

[14]   Mother first challenges several of the trial court's factual findings, arguing that they are not supported by the evidence.

[15]   First, Mother challenges the court's finding number five that "Shandrick went to the home and the parents submitted to a drug screen; both parents tested positive for 'spice,' a synthetic cannabinoid." (App. 79-80.) Mother argues that this finding is not supported by the evidence because the trial court did not admit into evidence the results of Parents' drug screens. However, at the hearing, caseworker Shandrick testified that "I drug screened both [Mother] and [Father] and they both tested positive for synthetic cannabinoids which is Spice." (Tr. 6.) Parents did not contemporaneously object to this testimony. Accordingly, the evidence supports the trial court's finding that Parents' initial drug screens tested positive for synthetic marijuana.[4]

[16]   Mother also argues that the trial court's references throughout the order to Parents' "substance abuse issues" are unsupported by the evidence, again because the court did not admit Parents' drug test results. However, DCS introduced records from Siblings' CHINS case as Exhibits 1-A through 1-T, and these documents reference Parents' history of substance abuse issues and DCS's

---

[4] Approximately ten questions later, when Shandrick testified about the results of subsequent drug screens, Parents objected to the "results of any drug screen tests as hearsay by this witness . . . ." (Tr. 7.) The trial court sustained the objection and struck Shandrick's response. No further evidence of drug test results was admitted into evidence, and the court made no findings about the results of Parents' subsequent drug tests.

provision of services to address them. Accordingly, the court's references to Parents' substance abuse issues are not clearly erroneous.

[17] Mother also appears to challenge the court's finding that "Mother and Father have made threats to kill . . . the court appointed special advocate, and MCDCS case manager Beals on this case." (App. 81.) At the hearing, homebased case manager Whitney Gaines ("Gaines") testified: "[Mother] and [Father] were very upset after the last court hearing and they had threatened to kill [the CASA] and when I had asked them…[Mother] about it, she had stated she wasn't going to kill her but somebody probably was." (Tr. 40.) The court's finding that Parents threatened the CASA is supported by Gaines's testimony; however, there was no evidence to support the finding that Parents threatened the family case manager. Nevertheless, where Parents threatened one service provider, not two, Mother fails to explain how this discrepancy would support a reversal of the trial court's CHINS adjudication.

[18] With the exception of the finding that Parents threatened the family case manager, the trial court's findings were not clearly erroneous.

### Conclusions of Law

[19] We turn our attention now to the trial court's conclusion that Child is a CHINS. The court entered the following conclusions:

> 22. The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent to supply the child with necessary food, clothing, shelter, medical care, education or supervision.

Mother has not addressed her mental health issues as well as her substance abuse issues. Father has not addressed his mental health issues, substance abused [sic] issues and domestic violence issues. Mother has not visited with [Child] and is, by her own admission, struggling with health issues that incapacitate her. Parents have made threatening statements toward the case manager and the CASA. Both parents obviously love [Child] very much but they are unable to safely parent [Child] because of substance abuse issues, mental health issues, their threatening behavior and Mother's physical health.

23. The coercive intervention of the court is necessary to ensure the safety and well-being of the child. Parents have not been participating in the services ordered under the case involving the older children and have untreated mental health and substance abuse issues.

(App. 82.)

[20] It is undisputed that Child is under eighteen. When DCS first investigated the allegations of neglect, Parents tested positive for synthetic marijuana and had a documented substance abuse history. Mother and Father's domestic violence issues are also well-documented in Siblings' CHINS case. The court made numerous findings regarding Mother's physical and mental health; specifically, the court found: (1) Mother's physical health prevented her from visiting Child and participating in services in Siblings' CHINS cases; (2) Mother was struggling to take care of herself due to significant medical problems and therefore was unable to take care of Child; (3) Mother was not going to the doctor, felt she should give up, talked of wanting to die, and made suicidal statements; (4) although Mother stated she could care for Child, she admitted to

being on bed rest; and (5) Mother appeared to be sick and in pain during the fact-finding hearing and spoke of giving up. (App. 80-82.)[5]

[21] Mother argues that the court's conclusion that Child was a CHINS was clearly erroneous because "[n]o legitimate attempt was made to show that [Child's] physical or mental condition is seriously impaired or that his parents are not supplying him with his basic needs." (Appellant's Br. 17.) However, "[t]he CHINS statute is intended to protect children who are 'endangered by parental action or inaction'; a court need not 'wait until a tragedy occurs to intervene.'" *In re S.A.*, 15 N.E.3d 602, 608 (Ind. Ct. App. 2014) (quoting *In re A.H.*, 913 N.E.2d 303, 306 (Ind. Ct. App. 2009)), *trans. denied*. In addition to Parents' domestic violence history and drug use, Mother was suffering from debilitating health problems and directly expressed to the court her desire to "give up." (Tr. 61.) This was sufficient evidence from which the court could infer that a six-month-old was seriously endangered and that his needs were not being met. Further, the evidence that Parents were not participating in services in Siblings' CHINS case supports the court's conclusion that Parents were unlikely to take initiative to meet Child's needs absent court intervention.

---

[5] Mother does not challenge these findings as unsupported by the evidence, but argues that DCS failed to comply with the Americans with Disabilities Act because the services provided to her in Siblings' CHINS case (and later at the dispositional hearing in this case) were not tailored to accommodate her disabilities. However, Mother did not raise the issue of ADA compliance before the trial court, and a party may not raise an issue for the first time on appeal. *In re K.S.*, 750 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2001). Accordingly, Mother's argument is waived.

[22] The trial court's findings support the conclusion that Child is a CHINS.

# Conclusion

[23] We will not revise the standard of review set forth by the Indiana Supreme Court. The trial court's order that Child is a CHINS is not clearly erroneous.

[24] Affirmed.

Riley, J., and Barnes, J., concur.