**Randy McVEY, Administrator of the Estate of Rachel McVey, Deceased, Bethany McVey, a Minor b/n/f Randy McVey and Tyler McVey, a Minor, b/n/f Randy McVey, Appellants–Plaintiffs,**

v.

**James SARGENT and Enterprise Rent–A–Car, Appellees–Defendants.**

No. 39A04–0601–CV–5.

Court of Appeals of Indiana.

Oct. 18, 2006.

Betsy K. Greene, Greene & Schultz, Bloomington, IN, Attorney for Randy McVey, et al.

John H. Shean, Shean Law Offices, Bloomington, IN, Attorney for Amicus Curiae, Indiana Right To Life.

Eric D. Johnson, J. Todd Spurgeon, Kightlinger & Gray, LLP, Indianapolis, IN, R. Jeffrey Lowe, Kightlinger & Gray, LLP, New Albany, IN, Attorney for James Sargent.

Michael E. Simmons, Mitchell M. Pote, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorneys for Enterprise Rent–A–Car.

**OPINION**

DARDEN, Judge.

### STATEMENT OF THE CASE

Randy McVey appeals the trial court's dismissal of his claim against James Sargent and Enterprise Rent–A–Car for the wrongful death of his unborn son T.M.

We affirm.

### ISSUES

1. Whether the trial court erred in dismissing the claim for failure to state a claim upon which relief may be granted under Indiana law.

2. Whether Indiana's Child Wrongful Death Statute, as interpreted by *Bolin v. Wingert*, 764 N.E.2d 201 (Ind.2002), violates the privileges and immunities clause of the Indiana Constitution.

3. Whether the statute, as interpreted by *Bolin*, violates the due process and equal protection clauses of the U.S. Constitution.

### FACTS

On August 29, 2003, Sargent rented a Chevrolet Malibu from Enterprise Rent-a-Car. While being driven by Sargent, the Malibu collided with a vehicle driven by

Rachel McVey, in which the minor daughter of Rachel and McVey—B.M.—was a passenger. Rachel died of injuries sustained in the collision, and B.M. was injured.

On October 13, 2004, McVey filed a complaint for damages against Sargent and Enterprise. McVey alleged that Sargent "negligently drove" the Malibu, and that Enterprise had "negligently entrusted" the Malibu to Sargent when its employees "knew or should have known" that Sargent "was under the influence of alcohol and incompetent to drive." (App.7). The complaint asserted one claim on behalf of McVey (as administrator of Rachel's estate) and B.M.—for simple negligence; on behalf of B.M., it asserted a second claim—alleging that Sargent was intoxicated at the time of the crash and seeking punitive damages.

On July 25, 2005, McVey filed an amended complaint that added a third cause of action. It alleged that Rachel "was pregnant with [T.M.], a viable fetus" at the time of the collision, and that the collision "caused [T.M.], a viable fetus, to sustain serious injuries which thereafter caused [T.M.]'s death." (App.13, 14). Thus, the claim was by McVey, as T.M.'s father, for the wrongful death of T.M.

On July 29, 2005, Enterprise filed a motion to dismiss the third claim, arguing that "no civil cause of action exists in [Indiana] for wrongful death of an unborn fetus." (App.19). Sargent also filed a motion to dismiss the third claim of McVey's complaint. On December 9, 2005, the trial court dismissed the third claim "because it fail[ed] to state a claim upon which relief

may be granted under Indiana law." (App.5).

## DECISION

### 1. Indiana's Wrongful Death Act

A motion to dismiss for failure to state a claim upon which relief may be granted "tests the legal sufficiency of a complaint; that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs of Northwest Indiana,* 845 N.E.2d 130, 134 (Ind.2006). We accept as true the facts alleged in the complaint,[1] and we test the sufficiency of the facts alleged "with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." *Id.*

McVey begins by acknowledging that in *Bolin v. Wingert,* our Supreme Court held that "only children born alive fall under Indiana's Child Wrongful Death Statute." 764 N.E.2d at 207. Nevertheless, McVey argues that *Bolin*'s holding as applied to "viable unborn children is distinguishable on its facts ... is non-binding *obiter dictum*" and "should be overturned." McVey's Br. at 10. We cannot agree.

McVey distinguishes *Bolin* by directing us to that part of the opinion which explained that its holding that the "exclusion of unborn children from Indiana's Child Wrongful Death Statute does not mean that negligently injured expectant mothers have no recourse"—because the mother who suffered a miscarriage as one of her injuries suffered in a collision "may claim damages to compensate her for her miscarriage." 764 N.E.2d at 207. McVey then asserts that because Rachel, T.M.'s

---

1. The complaint simply alleges that Rachel was pregnant with a viable fetus at the time of the collision. Thus, we assume that fact to be true. However, because the complaint does not allege that she was past her due date at the time of the collision, we do not assume that fact to be true—despite McVey's repeated assertions in that regard in his appellate arguments.

mother, died in the collision, this remedy is not available to her, and that *Bolin* leaves him with no remedy for the damages that he suffered when his unborn child died as a result of negligence by Sargent and Enterprise. We do not find this asserted "distinction" to warrant an opinion by this court contrary of the holding in *Bolin.*

McVey and *amicus curiae*[2] also argue that *Bolin*'s holding is *obiter dictum.* The Latin meaning of the term is "something said in passing," *Black's Law Dictionary,* 1102 (8th ed.2004), and our Supreme Court has stated that in appellate opinions, "statements not necessary in determination of the issue presented are *obiter dictum* . . . are not binding and do not become the law." *Koske v. Townsend Engineering Co.,* 551 N.E.2d 437, 443 (Ind. 1990). Our Supreme Court expressly defined its "sole task" in *Bolin* as being "to determine the scope of the word 'child' " in Indiana's Child Wrongful Death Statute. 764 N.E.2d at 204. Hence, its holding that the word "child" in the statute did not include an unborn child was necessary to the issue of determining "the scope of the word 'child' " and, therefore, not *obiter dictum. Id.*

McVey also "adopts the arguments" considered in the extensive discussion of *Bolin* by another panel of this court in *Horn v. Hendrickson,* 824 N.E.2d 690 (Ind.Ct. App.2005). McVey's Br. at 11. In *Horn,* the majority engaged in an alternative analysis leading to the conclusion that the current statute *could* encompass an action for the death of a viable fetus. 824 N.E.2d at 690. However, the holding of *Bolin* expressly turned on the words used by the legislature in the statute. Further, *Bolin* specifically stated: "The Legislature can certainly expand the scope of protection under the Child Wrongful Death Statute if it so chooses." 764 N.E.2d at 207. Since *Bolin*'s issuance in 2002, the wording of the statute has not been changed.[3]

*Bolin* carefully and thoroughly analyzed the language and structure of the current statute and concluded that it did not allow an action for a child not born alive. As we observed in *Horn,* 824 N.E.2d at 694, it is not this court's role to reconsider or declare invalid a decision of our Supreme Court. Therefore, based on *Bolin,* we must—as the panel in *Horn* did unanimously—affirm the trial court's dismissal of McVey's third claim.

**2. *Indiana Constitution***

█ The "privileges and immunities" clause of the Indiana Constitution, provides as follows:

> The general assembly shall not grant to . . . any class of citizens . . . privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

Ind. Const. art. 1, § 23. In *Collins v. Day,* 644 N.E.2d 72 (Ind.1994), our Supreme Court held that the clause

> imposed two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and

---

**2.** Indiana Right to Life, substantively aligned with McVey, filed an *amicus curiae* brief.

**3.** McVey proffered a notice of supplemental authority that consisted of an affidavit from a member of the general assembly who had introduced an unsuccessful bill that would have amended the Child Wrongful Death Stat-

ute. Because that material was not submitted to the trial court, we grant Sargent's motion (joined by Enterprise) to strike it. *See Schaefer v. Kumar,* 804 N.E.2d 184, 187 n. 4 (Ind. Ct.App.1992) ("matters outside the record cannot be considered by this court on appeal"), *trans. denied.*

equally available to all persons similarly situated.

*Id.* at 80. The court then stated that "in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion." *Id.*

McVey asserts that Indiana's Child Wrongful Death Statute, as interpreted by *Bolin,* violates Article 1, Section 23, of the Indiana Constitution under the first step of the *Collins* analysis. McVey observes that there is "a classification created of parents whose children are not born alive," and one of "parents whose children are born alive"; and he asserts that there is "no inherent distinction" between these two classifications. McVey's Br. at 21. *Bolin* emphasized at the outset that its "sole task" was "to determine the scope of the word 'child' in the Wrongful Death Statute." 764 N.E.2d at 205. Thus, any "classification" created by *Bolin* is one based on the inherent characteristic of the *child.* Accordingly, we consider whether there are inherent differences between children who have been born and unborn fetuses. We conclude that there are significant inherent differences: the child who has been born has an independent existence outside the mother's body, and the unborn fetus lives within her body.[4] McVey further opines that under *Bolin,* the statute improperly creates one classification of "mothers who lose unborn viable children" and another of "the fathers of those children." McVey's Br. at 21. Again, we find inherent characteristics distinguish these classifications. When a mother's damages from another's negligence include a miscarriage, she has suffered resulting physical pain and medical treatment; a father has not.

The statute grants to the parent of a child born alive the privilege of bringing an action for wrongful death. This privilege "is reasonably related to the inherent distinctions" between the classifications, and granting it was within the discretion of the legislature. *Collins,* 644 N.E.2d at 82. Therefore, we cannot conclude that the statute violates the privileges and immunities clause of Indiana's Constitution.

### 3. *U.S. Constitution*

■ The Fourteenth Amendment of the United States Constitution provides that "no state . . . shall deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1. The equal protection clause does not preclude the government's ability to classify persons or "draw lines" in the creation and application of laws, but it does guarantee that those classifications will not be based on impermissible criteria or arbitrarily used to burden a group of individuals. *Lake County Clerk's Office v. Smith,* 766 N.E.2d 707, 712 (Ind.2002). Classifications not involving a suspect class or a fundamental right are reviewed under a rational basis test. *Id.* This test merely requires that the statute be rationally related to a legitimate governmental purpose. *Id.*

McVey argues that as interpreted by *Bolin,* the Child Wrongful Death Statute created classifications which violate the equal protection clause. Specifically, McVey and the *amicus* assert the impermissible classifications of "permitting the parents of babies born alive to recover damages for wrongful death while excluding parents of viable, but unborn, babies

---

4. We also agree with Enterprise's observation that the "law is replete with examples of how children and viable fetuses are dealt with differently," and that "Indiana law predominantly utilizes the date of birth, not the date of viability, to establish a determination of eligibility" for various rights, activities, and occupations. Enterprise's Br. at 15.

from recovery." McVey's Br. at 23. McVey asserts another impermissible classification: a mother may "recover damages for the loss of an unborn viable child but not the father." McVey's Br. at 23. McVey asserts that these classifications "cannot be justified by a rational relationship to a legitimate state interest." *Id.*

The legislature created our child wrongful death statute, which recognized a cause of action for the death of a child, an action not recognized at common law. *Bolin*, 764 N.E.2d at 203. *Bolin* observed that in its task of determining the meaning of the word "child" in the current statute, it was required to determine where the legislature had intended to "draw the line against otherwise open-ended liability." *Id. Bolin* reviewed the range of options chosen by other states to define when a parent could bring a wrongful death action. It concluded that the wording of the statute enacted by Indiana's legislature indicated its intent that such an action could only be brought when the child had been "born alive." *Id.* at 207.

■ The state has an interest in determining that there is a specific point at which parents may bring an action to recover for the death of a child caused by another's negligence. As *Bolin* acknowledged, the lack thereof is "otherwise open-ended liability." *Id.* at 204. The fact that the legislature set that point at the time of a live birth is rationally related to its legitimate interest in having such a time defined for its citizenry so that they might then pursue the action authorized by the statute. Therefore, we do not find the statute to violate equal protection.

We affirm.

RILEY, J., and VAIDIK, J., concur.