


FILED
Mar 22 2024, 9:00 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Court of Appeals of Indiana

DeMarcus Hazelwood,

*Appellant-Respondent*

v.

The Common Wealth Apartments,

*Appellee-Petitioner*

---

March 22, 2024

Court of Appeals Case No.
23A-EV-1404

Appeal from the Center Township Small Claims Court

The Honorable Brenda A. Roper, Judge

Trial Court Cause No.
49K01-2305-EV-001946

---

**Opinion by Judge May**
Judge Felix concurs.
Judge Bailey concurs with separate opinion.

**May, Judge.**

[1] DeMarcus Hazelwood appeals the trial court's order granting The Common Wealth Apartments ("Common Wealth") possession of Hazelwood's apartment. Hazelwood raises two issues on appeal, but we find one dispositive: Whether the trial court erred in granting possession of the apartment to Common Wealth, which is a landlord that accepts federal housing subsidies, when Common Wealth failed to give Hazelwood a thirty-day notice to vacate. We reverse and remand.

## Facts and Procedural History

[2] Common Wealth received federal subsidies to house eligible residents in its near eastside Indianapolis apartment complex, and Hazelwood was one of Common Wealth's rent-subsidized residents. Hazelwood's lease began on February 1, 2023, and the lease's term was set to expire on January 31, 2024. On May 11, 2023, Common Wealth filed a notice of claim seeking a court order granting it possession of Hazelwood's apartment.[1] On May 19, 2023, Common Wealth filed an amended notice of claim alleging it was entitled to possession of Hazelwood's apartment because of "[n]on-payment of rent/behavior[.]" (App. Vol. II at 9.)

---

[1] This initial notice of claim sought emergency possession of Hazelwood's apartment and alleged Hazelwood was engaged in criminal activity and disturbing the neighbors. The trial court held an emergency eviction hearing on May 19, 2023. A transcript of that hearing is not in the record, but Common Wealth filed its amended notice of claim on the same day. The trial court then set a hearing on Common Wealth's amended notice of claim for June 6, 2023.

[3]     On June 5, 2023, Hazelwood filed a motion to dismiss Common Wealth's notice of claim. Hazelwood argued that federal law required Common Wealth to give Hazelwood a thirty-day notice before filing a claim to evict him from his apartment and that Common Wealth was required to make a grievance procedure available to Hazelwood before evicting him. Hazelwood argued that, because Common Wealth failed to meet either requirement, the trial court should dismiss Common Wealth's claim.

[4]     On June 6, 2023, the trial court held a hearing on Common Wealth's notice of claim. Common Wealth responded to Hazelwood's motion to dismiss at the hearing by arguing that the provision of federal law requiring a thirty-day notice "appears to have terminated months ago. And with respect to the informal resolution issues, we're here." (Tr. Vol. II at 10.) Hazelwood and Common Wealth agreed Hazelwood was behind in paying his rent, but the parties disagreed about the total amount of Hazelwood's arrearage. The trial court implicitly overruled Hazelwood's motion to dismiss and found in favor of Common Wealth on its claim for possession of the apartment. Hazelwood filed a motion to stay the trial court's order, which the trial court denied. Hazelwood then filed a notice of appeal and an emergency motion to stay the trial court's order before this Court, and this Court granted Hazelwood's motion.

## Discussion and Decision

[5] Initially, we note Common Wealth chose not to file an appellee's brief. "Under such circumstances, we will not develop an argument for the appellees but instead will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Inspire Outdoor Living v. Norris*, 193 N.E.3d 428, 430 (Ind. Ct. App. 2022). Prima facie error "means at first sight, on first appearance, or on the face of it." *Id.* (internal quotation marks omitted).

[6] Hazelwood contends the trial court erred when it denied his motion to dismiss. He asserts Common Wealth violated federal law by evicting him without first giving him a thirty-day notice.[2] Because Hazelwood's appeal presents a pure question of law, we review his claim de novo. *Ramirez v. Wilson*, 901 N.E.2d 1, 2 (Ind. Ct. App. 2009), *trans. denied*.

[7] A provision of the Coronavirus Economic Stabilization Act ("CARES Act") enacted in 2020 placed a temporary moratorium on eviction filings. 15 U.S.C. § 9058. The provision stated:

> **(a) Definitions**
>
> In this section:
>
> > **(1) Covered dwelling**

---

[2] Hazelwood also asserts Common Wealth violated federal law by not providing a grievance process to him pursuant to 24 C.F.R. § 578.91. However, we need not address this issue because we find Common Wealth's failure to provide a thirty-day notice before evicting Hazelwood dispositive. *See*, *e.g.*, *State v. Royer*, 166 N.E.3d 380, 402 n.18 (Ind. Ct. App. 2021) (declining to address issue when it was not necessary to resolve the appeal).

The term "covered dwelling" means a dwelling that--

> **(A)** is occupied by a tenant--
>
>> **(i)** pursuant to a residential lease; or
>>
>> **(ii)** without a lease or with a lease terminable under State law; and
>
> **(B)** is on or in a covered property.

**(2) Covered property**

The term "covered property" means any property that--

> **(A)** participates in--
>
>> **(i)** a covered housing program (as defined in section 12491(a) of Title 34); or
>>
>> * * * * *

**(3) Dwelling**

The term "dwelling"--

> **(A)** has the meaning given the term in section 3602 of Title 42; and
>
> **(B)** includes houses and dwellings described in section 3603(b) of Title 42.
>
>> * * * * *

**(b) Moratorium**

During the 120-day period beginning on March 27, 2020, the lessor of a covered dwelling may not--

> **(1)** make, or cause to be made, any filing with the court of jurisdiction to initiate a legal action to recover possession

of the covered dwelling from the tenant for nonpayment of
rent or other fees or charges; or

**(2)** charge fees, penalties, or other charges to the tenant
related to such nonpayment of rent.

**(c) Notice**

The lessor of a covered dwelling unit--

**(1)** may not require the tenant to vacate the covered
dwelling unit before the date that is 30 days after the date
on which the lessor provides the tenant with a notice to
vacate; and

**(2)** may not issue a notice to vacate under paragraph (1)
until after the expiration of the period described in
subsection (b).

*Id.* (formatting in original).

Our first step in ascertaining whether the thirty-day notice provision outlined in 15 U.S.C. § 9058(c) applied to Common Wealth is to determine whether Hazelwood's apartment qualified as a "covered dwelling" under 15 U.S.C. § 9058(a)(1). A "covered dwelling" is "a dwelling that . . . is occupied by a tenant . . . pursuant to a residential lease . . . and . . . is on or in a covered property." 15 U.S.C. § 9058(a)(1). Hazelwood occupied his apartment pursuant to a residential lease, and the apartment was a "dwelling" because he used it as a residence. *See* 42 U.S.C. § 3602(b) ("'Dwelling' means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families[.]"). "Covered property" is "any property that . . . participates in . . . a covered housing

program (as defined in section 12491(a) of Title 34)[.]" 15 U.S.C. § 9058(a)(2)(A)(i). 34 U.S.C. § 12491(a)(3) lists various programs that meet the statute's definition of "covered housing program," including "the programs under title IV of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11360 et seq.)[.]" 34 U.S.C. § 12491(a)(3)(D). 42 U.S.C. § 11381(2) states that one purpose of the McKinney-Vento Homeless Assistance Act is "to provide funding for efforts by nonprofit providers and State and local governments to quickly rehouse homeless individuals and families while minimizing the trauma and dislocation caused to individuals, families, and communities by homelessness[.]" Hazelwood was housed at Common Wealth through a program called Permanent Supportive Housing, which was funded by the McKinney-Vento Homeless Assistance Act.[3] 24 C.F.R § 578.37(a)(1)(i). Thus, Hazelwood's apartment met all the requirements for a "covered dwelling."

[9] Having determined that Hazelwood's apartment qualified as a "covered dwelling" within the meaning of 15 U.S.C. § 9058(c), we must next determine whether that provision of the CARES Act was still in effect when Common Wealth initiated eviction proceedings against Hazelwood. Following expiration of the CARES Act's 120-day statutory eviction moratorium in July 2020, Congress did not renew it. *Ala. Ass'n of Realtors v. U.S. Dep't of Health &*

---

[3] The Permanent Supportive Housing program was funded by the McKinney-Vento Homeless Assistance Act. 24 C.F.R. § 578.37(a)(1)(i). Hazelwood asserted at trial that he was housed through the Permanent Supportive Housing program, and Common Wealth did not challenge Hazelwood's assertion at trial or provide contradictory evidence. We accordingly presume Hazelwood was housed through the Permanent Supportive Housing program.

*Hum. Servs.*, 141 S. Ct. 2485, 2486 (2021). When the Centers for Disease Control and Prevention ("CDC") subsequently attempted to use its administrative power to extend the moratorium further, the United States Supreme Court held the CDC lacked the authority to do so without authorization from Congress. *Id*. at 2490.

[10] Hazelwood nevertheless contends that, while the eviction moratorium authorized by 15 U.S.C. § 9058(b) has expired, the notice provision outlined in 15 U.S.C. § 9058(c) remains in effect. He notes that "the continuing vitality of the 30-day notice requirement is shown by the logic of the statute, which states that the eviction moratorium expired after 120 days and that landlords could not provide the 30-day notice to vacate before the moratorium had ended." (Appellant's Br. at 12-13.) While Indiana courts have not specifically addressed this issue, courts outside of Indiana have analyzed the issue and concluded the notice provision remained in effect after expiration of the eviction moratorium.

[11] In *In re Arvada Vill. Gardens LP v. Garate*, the Colorado Supreme Court held that the federal thirty-day notice provision is still in effect for covered properties. 529 P.3d 105, 106 (Colo. 2023). Thus, the Court dismissed a landlord's eviction action because the landlord failed to give the tenant a thirty-day notice before initiating eviction proceedings. *Id*. at 108. Likewise, the Washington Court of Appeals held the thirty-day notice provision is still in effect. *Sherwood Auburn LLC v. Pinzon*, 521 P.3d 212, 220 (Wash. Ct. App. 2022), *rev. denied*; *see also*, *Watson v. Vici Cmty. Dev. Corp.*, No. CIV-20-1011-F, 2021 WL 1394477, at *11 (W.D. Okla. Apr. 12, 2021) (holding thirty-day notice provision extended

beyond expiration of the moratorium provision in declining to dismiss declaratory judgment action). We follow the lead of our sister states and hold that the notice provision did not expire with the temporary eviction moratorium. Common Wealth failed to comply with 15 U.S.C. § 9058(c) when it did not give Hazelwood a thirty-day notice before initiating eviction proceedings. *See Sherwood Auburn, LLC*, 521 P.3d at 217-18 (holding notice must be given to tenant at least thirty days before filing eviction action). Therefore, we reverse the trial court's judgment in favor of Common Wealth and remand with instructions to dismiss Common Wealth's notice of claim. *See*, *e.g.*, *Johnson v. Hous. Auth. of South Bend*, 204 N.E.3d 940, 947 (Ind. Ct. App. 2023) (reversing trial court's order granting possession of apartment to landlord because tenant was not afforded sufficient due process).

## Conclusion

Common Wealth violated federal law by failing to give Hazelwood a thirty-day notice to vacate as required by 15 U.S.C. § 9058(c) before initiating eviction proceedings against him. We reverse the trial court's judgment and remand with instructions to dismiss Common Wealth's notice of claim.

Reversed and remanded.

Felix, J. concurs.
Bailey, J., concurs with a separate opinion.

ATTORNEY FOR APPELLANT

Ann Harris Smith
Indiana Legal Services, Inc.
Indianapolis, Indiana

Andrew Tyler Thomas
Indiana Legal Services, Inc.
Fort Wayne, Indiana

**Bailey, Judge, concurring with separate opinion.**

[14] I concur but write separately to note that the 30-day notice requirement expired when the national emergency concerning the coronavirus disease 2019 ("COVID-19") pandemic terminated on April 10, 2023. However, because Hazelwood's non-payment of rent occurred before that date, Common Wealth was required to provide him with 30 days' notice to vacate prior to beginning eviction proceedings.

[15] On March 13, 2020, the President declared a national emergency concerning the COVID-19 pandemic. He did so pursuant to his authority under 50 U.S.C. § 1621. In response to the declaration of the national emergency, in March 2020 Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") "to alleviate burdens caused by the burgeoning COVID-19 pandemic." *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, 141 S.Ct. 2485, 2486 (2021) (citing Pub. L. 116-136, 134 Stat. 281). Among other relief programs, the CARES Act imposed the 120-day eviction moratorium and the 30-day notice to vacate requirement for properties that participated in federal assistance programs or were subject to federally backed loans. Coronavirus

Aid, Relief, and Economic Securities Act, Pub. L. No. 116-136, 134 Stat. 281, § 4024, at 492-494 (codified at 15 U.S.C. § 9058(b),(c)).

As the majority holds, the 30-day notice requirement did not expire at the same time the eviction moratorium expired. As recently noted by the Ohio Court of Appeals, to read the statute in any other way would make section (c) of the statute superfluous:

> Under 15 U.S.C. 9058(c)(2), lessors did not have an obligation to provide a 30-day notice to vacate pursuant to subsection (c)(1) until after the moratorium expired. Consequently, 15 U.S.C. 9058(c)(1) did not become operative until July 25, 2020—the day after the moratorium expired. Under Olentangy Commons' interpretation of 15 U.S.C. 9058(b) and (c), the notice provision in subsection (c)(1) is meaningless, as it would have expired on July 24, 2020—a day prior to becoming operational. Thus, Olentangy Commons' interpretation conflicts with the rule that "'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States*, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009), quoting *Hibbs v. Winn*, 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004) (further quotation omitted).

*Olentangy Commons Owner LLC v. Fawley*, -- N.E.3d --, 2023 WL 7327716 at *8 (Ohio Ct. App. Nov. 7, 2023).

However, on April 10, 2023, in accordance with its authority under 50 U.S.C. § 1622(a),[4] Congress passed H.J. Res. 7, a joint resolution terminating "the national emergency declared by the finding of the President on March 13, 2020." National Emergencies Act, Pub. L. No. 118-3, 137 Stat. 6. On that same date, the President signed H.J. Res. 7 into law. Thus, as of April 10, 2023, there ceased to be a national emergency regarding COVID-19. At that point, the laws enacted by Congress specifically to address that national emergency also expired. *See* 50 U.S.C. § 1622(a) ("…any powers or authorities exercised by reason of said emergency shall cease to be exercised after such specified [termination] date…"). Therefore, 15 USC § 9058 and the related

---

[4] 50 U.S.C. § 1622(a) provides:

Any national emergency declared by the President in accordance with this subchapter shall terminate if--

(1) there is enacted into law a joint resolution terminating the emergency; or

(2) the President issues a proclamation terminating the emergency.

Any national emergency declared by the President shall be terminated on the date specified in any joint resolution referred to in clause (1) or on the date specified in a proclamation by the President terminating the emergency as provided in clause (2) of this subsection, whichever date is earlier, and any powers or authorities exercised by reason of said emergency shall cease to be exercised after such specified date, except that such termination shall not affect--

(A) any action taken or proceeding pending not finally concluded or determined on such date;

(B) any action or proceeding based on any act committed prior to such date; or

(C) any rights or duties that matured or penalties that were incurred prior to such date.

rules and regulations—which were created specifically to address the COVID-19 national emergency—expired on April 10, 2023.[5]

[18]   Nevertheless, to the extent the eviction action was based on non-payment of rent prior to April 10, 2023, it still required the 30-day notice to vacate. 50 U.S.C. § 1622(a) provides, in pertinent part, that the termination of the national emergency "shall not affect-- … (B) any action or proceeding based on any act committed prior to such date; or (C) any rights or duties that matured or penalties that were incurred prior to such date." Common Wealth's eviction action filed on May 11, 2023, and amended on May 19, 2023, was based upon Hazelwood's alleged non-payment of rent for April 2023 and for some unspecified preceding month.[6] Thus, the eviction proceeding was based, at least in part, on an act (i.e., failure to pay rent) committed prior to April 10, 2023, and it involved Hazelwood's right to a 30-day notice to vacate that "matured" prior to April 10, 2023. *See* 50 U.S.C. § 1622(a)(B), (C). Therefore, despite the April 10, 2023, expiration of the COVID-19 national emergency and

---

[5] This reading of the law is supported by the language of the Department of Housing and Urban Development ("HUD") rules and regulations interpreting 15 U.S.C. § 9058. *See* 24 C.F.R. § 247.4(c), and 24 C.F.R. § 966.8 (emphasis added) (both noting that the 30-day notice requirement is applicable "*if* the Secretary determines that tenants must be provided with adequate notice to secure Federal funding that is available *due to a Presidential declaration of a national emergency*"); *see also* 30-Day Notice Requirement Prior to Termination of Lease for Nonpayment of Rent, 88 Fed. Reg. 83877-02 (proposed Dec. 1, 2023) (emphasis added) (proposing a rule under which "the 30-day notification requirement from the interim final rule *would no longer be contingent on the existence of a national emergency…*").

[6] The original notice of claim for possession filed on May 11, 2023, stated that Hazelwood owed more than one month's worth of rent, i.e., "$1,784.40." App. v. II at 8; *see also id*. at 7 (noting monthly rent was $897.00). Thus, Hazelwood allegedly owed rent for April 2023 and for most of an unspecified month prior to April 2023.

the laws enacted pursuant to it, Hazelwood was entitled to a 30-day notice to vacate prior to the implementation of eviction proceedings, pursuant to 15 U.S.C. § 9058.